# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| COMAU LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-12623-SDD-RSW |
| | ) | |
| v. | ) | |
| | ) | Judge Stephanie Dawkins Davis |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) | Magistrate Judge R. Steven Whalen |
| | ) | |
| Defendant. | ) ) | ORAL ARGUMENT REQUESTED |

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Comau's response confirms that the AC does not state a claim under any standard. Comau does not argue that the AC satisfies Rule 9(b)'s "strict" pleading standard—nor could it. The AC does not identify a single payment—whether fraudulent or not—that BCBSM made using the Plan's assets. And the response concedes that the AC lacks allegations about *how* BCBSM's claims process works or *why* that process is imprudent under ERISA. Unable to allege even the most basic facts about this process, even with the help of a purported whistle blower, the AC fails to state a claim even under Rule 8 and should be dismissed with prejudice.

**I.      Rule 9(b) Applies to Comau's Claim.**

Rather than argue that the AC satisfies Rule 9(b), Comau insists that the AC is not subject to a heightened pleading standard because it "does not rest upon, much less even allege, any fraudulent conduct by BCBSM." Resp. 9. Not so. The AC alleges that "[t]his dispute stems from . . . [a] relationship that has been fraught with *deception* and *fraud*" by BCBSM, including an alleged "practice of knowingly paying Providers' improper claims," which the AC alleges are "fraudulent." AC ¶¶10, 70, 75. The AC continues that BCBSM actively "conceal[ed]" its practice of paying fraudulent claims from its customers. *Id.* ¶¶71, 94(b).

These allegations describe the contours of a classic fraud claim. *See, e.g.*, *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239 (6th Cir. 2012) (fraud by omission requires (1) duty to disclose a material fact; (2) defendant's

1

failure to disclose the fact; (3) reliance; and (4) damages). The AC alleges that BCBSM was required to both "fully disclose its actions" and "avoid making false or misleading statements." AC ¶93. Rather than disclose its supposed practice of knowingly paying fraudulent healthcare claims, the AC alleges that BCBSM "conceal[ed]" this practice from customers and misrepresented "itself . . . as an expert in preventing [healthcare] fraud." *Id.* ¶¶81, 94(b). Comau then alleges that it "rel[ied] on BCBSM's own representations" and the "information BCBSM provided to Comau" about its "reputation for preventing fraud." *Id.* ¶¶84, 87-88. This scheme allegedly "cost Comau thousands of dollars in overpayments." *Id.* ¶63.

That the AC alleges intentional "deception and fraud" (*id.* ¶10) is what distinguishes this case from *Rankin v. Rots*, 278 F. Supp. 2d 853 (E.D. Mich. 2003) and *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004). *Rankin* considered a complaint where "plaintiffs allege[d] a breach of fiduciary duty *but d[id] not allege fraud*," and the court concluded that allegations merely "similar to fraud allegations, *i.e.*, that [defendants] provided false and misleading information," did not give rise to Rule 9(b)'s heightened pleading requirement. 278 F. Supp. 2d at 865-66. Similarly, the plaintiff in *CMS Energy* did not allege "an intent to deceive" such that their breach of fiduciary duty claim would be subject to Rule 9(b). 312 F. Supp. 2d at 909. Neither circumstance is present here. The AC alleges a pattern of "deception and fraud," which includes both misrepresentations

2

and omissions that were not merely "careless" but intentional. *See* AC ¶¶ 10, 67-68 (alleging that BCBSM "punished" Wegner "for his unwillingness to remain quiet").

Nor can Comau's response walk back the allegations in its AC to avoid Rule 9(b) scrutiny. *See Jocham v. Tuscola Cty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) ("plaintiffs may not amend their complaint through a response brief"). Because the claim asserted in the AC sounds in fraud, it is subject to Rule 9(b). *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012).

**II.     There Is No Basis To Relax Rule 9(b)'s "Strict" Standard.**

As a fallback, Comau asserts that the Court should apply a "relaxed" version of Rule 9(b) that does not require particularity because BCBSM supposedly "holds all the inside information relevant to this case." Resp. 10. But this Court "has no more authority to 'relax' the pleading standard established by Civil Rule 9(b) than . . . to increase it." *United States v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017). And in any event Comau has not alleged that the information it seeks lies "exclusively" with BCBSM. *Yuhasz v. Brush Wellman, Inc.*, 181 F. Supp. 2d 785, 793 (N.D. Ohio 2001). To the contrary, Wegner purportedly has: (i) "personal knowledge of BCBSM's records," (ii) "access to all of Comau's records, billing, accounting, and healthcare claims information"; and (iii) "personal knowledge of Comau's data." AC ¶¶59, 61, 63. Comau cannot have it both ways; invoking Wegner's alleged "personal knowledge" of records to prop up its claim, then

3

feigning a lack of access to those records to avoid Rule 9(b). There is no basis for relaxing Rule 9(b).

## III. The AC Does Not Plausibly Allege An ERISA Violation Under Rule 8.

Comau argues that the AC satisfies Rule 8(a)'s more lenient pleading standard because it alleges facts from which the Court can "infer that BCBSM's payment systems were flawed." Resp. 13. But the only *fact* offered to support Comau's breach-of-fiduciary duty claim is Wegner's allegation that he found a handful of improper overpayments that BCBSM made on behalf three *other* customers. Even accepted as true,[1] that bare fact is not "suggestive of, rather than merely consistent with, a finding of misconduct," *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). And it has nothing to do with Comau.

Comau then *speculates* that the cause of the overpayments were "system failures," that BCBSM used the same system to process Comau's claims, and Comau was "subject" to "the very same issues" that lead to overpayments for those *other* customers. Resp. 10-11. But Comau misses the point. ERISA does not require BCBSM's fraud-detection system to be perfect. *DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) ("the ultimate outcome

---

[1] As discussed in BCBSM's opening brief, the Court should disregard the now-dismissed Wegner complaint when ruling on this motion. Op. Br. 8 n.4. The response does not dispute this point.

4

of a [decision] is not proof of imprudence" and an ERISA fiduciary is not "imprudent merely because [a plan] lost money"). It only requires BCBSM's fraud-detection system to be reasonably effective compared to other third-party administrators. *Cf. Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) ("a plaintiff must provide a sound basis for comparison" to allege duty-of-prudence claim).

That Wegner allegedly identified overpayments made by BCBSM on behalf of three other customers[2] does not suggest that BCBSM's fraud-detection is less effective than its peers. As set forth in BCBSM's opening brief (at 5-6), BCBSM has led the health care industry in developing fraud-detection systems. AC ¶¶81-83, Ex. F. Those systems have resulted in the successful recovery of $333 million. *Id.* Thus, looking at BCBSM's fraud-detection system "as a whole in the context of [Comau's] allegations," there are no facts suggesting that BCBSM breached the duty of prudence. *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011).

Recognizing this flaw, Comau again argues that it need not "plead a more specific theory because BCBSM holds the information" relevant to its claim. Resp.

---

[2] Comau's response claims that Wegner has "personal knowledge" of an overpayment by Comau's Plan. Resp. 6. But the AC does not allege any facts supporting that claim. The specific overpayments in the AC relate to *other* customers (AC ¶¶49-51), and Wegner's "personal knowledge" relates to alleged "system failures" that he *speculates* would have "subjected Comau to the very same issues," (*id.* ¶58). In any event, even if Comau had properly alleged *an* overpayment by Comau's Plan—which it has not—that still would be insufficient to satisfy Rule 8 for all of the reasons set forth in BCBSM's opening brief and herein.

5

13. In support of this argument, Comau cites *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) and *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016). But neither case applies here. In those cases, plaintiffs did not have the help of a purported whistle blower with "personal knowledge" about the fiduciaries' decision-making process. *See* AC ¶¶59, 61, 63. Here, Wegner "spoke with Comau" and allegedly "confirmed" that BCBSM used Comau's Plan assets to pay fraudulent healthcare claims. Resp. 6, 11, 17. Thus, Comau cannot now claim that "BCBSM holds the information" it needs to plead a breach-of-fiduciary-duty claim.

Rule 8(a) requires more than allegations that are "merely consistent with[] a finding of misconduct." *Pension Ben. Guar. Corp.*, 712 F.3d at 719. Yet the AC offers nothing more. Comau's baseless speculation cannot substitute for well-founded factual allegations or "nudge" Comau's claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### IV. Comau's Pre-2013 Claims Are Time-Barred.

Comau argues that BCBSM's statute of limitations argument is premature because it requires the Court to decide facts. Resp. 15. But the only facts necessary are admitted in Comau's complaint. The AC concedes that "BCBSM has been paying grossly inflated healthcare claims" "*since at least 1997*." AC ¶38 (emphasis added). Because "the allegations in the [AC] affirmatively show that [Comau's] claim is time barred" with respect to BCBSM's payment of improper healthcare

6

claims that pre-date September 6, 2013, no judicial fact-finding is necessary and the Court may dismiss them under Rule 12(b)(6). *Cataldo*, 676 F.3d at 547.

Alternatively, Comau argues that the statute of limitations period is extended because of "fraud or concealment." Resp. 16-17. (The AC sounds in fraud, apparently, only when convenient to Comau's theory *de jour*.) But the alleged fact that BCBSM did not tell Comau about the alleged overpayments is not sufficient to invoke the "fraud or concealment" exception to ERISA's statute of limitations. *Martin v. Consultants & Adm'r, Inc.*, 966 F.2d 1078, 1094 (7th Cir. 1992) ("Concealment by mere silence is not enough."). And the allegation that BCBSM told Wegner not to alert customers about alleged overpayments does not re-start the limitations period either. This lone incident does not amount to "a course of conduct designed to conceal evidence of" BCBSM's wrongdoing from Comau. *Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487, 1492 (8th Cir. 1988). And Comau does not argue that it was unable to discover the alleged overpayments "despite [its] exercise of due diligence or care." *Id*. Therefore, Comau cannot invoke the "fraud or concealment" exception.

## CONCLUSION

BCBSM respectfully asks this Court to dismiss the AC with prejudice.

Dated: March 11, 2020                    Respectfully submitted,

                                                               /s/Kathleen L. Carlson
G. Christopher Bernard (P57939)          Thomas D. Cunningham

7

| | |
|---|---|
| Maria L. Martinez (P78790) | Tacy F. Flint |
| Blue Cross Blue Shield of Michigan | Kathleen L. Carlson |
| 600 East Lafayette Boulevard | Benjamin I. Friedman |
| Detroit, MI 48226 | Sidley Austin LLP |
| Telephone: (313) 225-6541 | One South Dearborn |
| CBernard@bcbsm.com | Chicago, IL 60603 |
| MMartinez3@bcbsm.com | Telephone: (312) 853-7000 |
| | |
| | tcunningham@sidley.com |
| | tflint@sidley.com |
| | kathleen.carlson@sidley.com |
| | benjamin.friedman@sidley.com |

*Counsel for Defendant*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2020, I caused true and correct copies of the foregoing to be served via the Court's CM/ECF system upon all counsel of record.

/s/ Kathleen L. Carlson
Kathleen L. Carlson