UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMAU LLC,

                    Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

                    Defendant.

_____/

Case No.: 19-12623

Stephanie Dawkins Davis
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING IN PART BCBSM'S MOTION TO COMPEL
ALIGNMENT OF EXPERT REPORT (ECF No. 88, 138, 139), GRANTING
IN PART COMAU'S EMERGENCY MOTION TO EXTEND DISCOVERY
(ECF No. 115), AND SCHEDULING STATUS CONFERENCE
<u>REGARDING DISCOVERY DISPUTES</u>**

## I.    BACKGROUND

A.    <u>Procedural History</u>

Comau LLC commenced this ERISA case on September 6, 2019.  (ECF No.

1).  Comau amended its complaint on December 12, 2019.  (ECF No. 15).  This

matter was referred to the undersigned for all pretrial proceedings except

dispositive motions.  (ECF No. 91).

On September 29, 2021, Defendant Blue Cross Blue Shield of Michigan

("BCBSM") filed a sealed and unsealed but redacted copy of its Motion to Compel

Plaintiff to Align its Expert Report with the Allegations in its Complaint and to

Stay Discovery Until Plaintiff Does So.  (ECF Nos. 87, 88).  Along with the

1

motion to compel, BCBSM filed numerous motions to seal briefs and exhibits related to this and other pending motions.  The Court denied in part those motions to seal.  (ECF No. 128).  BCBSM then timely filed unsealed, unredacted copies of its motion to compel.  (ECF Nos. 138, 139).  In this Order, the Court references the opening brief filed at ECF No. 138 and response brief at ECF No. 97.

Comau filed an Emergency Motion to Extend Discovery which is also addressed below.  (ECF No. 115).

The Court held a hearing on BCBSM's motion to compel on December 14, 2021.  For the reasons explained below, the motion to compel is **GRANTED IN PART, DENIED IN PART**.  The motion to extend discovery is **GRANTED IN PART**.

B.      Amended Complaint Allegations

Comau develops and produces process automation, manufacturing, and service products.  (ECF No. 15, PageID.290).  During the relevant period, Comau provided health care benefits to its employees through a self-insured benefit plan (the "Plan").  (*Id*.).  Comau paid the health care costs of its employees up to a certain threshold rather than buying an insurance policy.  (*Id*.).  Comau retained BCBSM several years ago to administer its healthcare plan.  (*Id*.).  BCBSM used funds provided by Comau (in the form of prepayments to a BCBSM-owned bank account) to pay covered employee healthcare claims.  (*Id.* at PageID.291).

2

The current dispute centers on BCBSM's handling of plan assets. Comau alleges BCBSM has been paying grossly inflated healthcare claims from healthcare providers since 1997. (*Id.* at PageID.296, at ¶ 38). As an example, Comau provided: a provider charges $18,000 for a routine urinalysis on a Comau employee, but the actual cost of the routine urinalysis is $10.00 or less. BCBSM knows the bill is grossly inflated, but it used Plan assets to pay the grossly inflated bill anyway. (*Id.* at ¶ 39-40). Citing news articles related to inflated urinalysis bills, Comau asserts these "improper claims" are well-known in the health care industry. (*Id.* at ¶ 41-42).

According to Comau, BCBSM's account manager, Dennis Wegner, learned of gross overpayments for routine medical testing on other accounts. Wegner had access to customer records and billing, and to BCBSM's healthcare claims processing system, software, and billing system, which were used universally on all customer accounts. (*Id.*at PageID.297, at ¶ 47-48). Wegner questioned claims processing for overpayments on three non-Comau accounts. Because BCBSM's systems are applied universally to its customers, Comau's healthcare claims would have been processed, billed, and paid using the same BCBSM systems as the other customers. As a result, Comau alleges the same systems failures that gave rise to the three other overpayment cases would have subjected Comau to the same issues. In fact, Comau alleges Wegner knows of and confirmed to Comau that it was

3

affected by BCBSM's payment of improper claims.  (*Id.* at PageID.298-99).

Wegner allegedly alerted executives at BCBSM, yet the company did not act to

stop the payment of improper claims.  (*Id.* at PageID.300, at ¶ 66).  Wegner was

terminated from his employment during November 2018.  (*Id.* at ¶ 68).

Comau alleges payment of claims it knows to be improper is inconsistent

with health insurance industry standards and breaches BCBSM's fiduciary duty

pursuant to the Employee Retirement Income Security Act in the following not

limited ways:

> (a) Intentionally and knowingly paying grossly inflated
> and knowingly inflated healthcare claims to Providers;
>
> (b) Failing to correct/update its Billing System to avoid
> Plan assets being used to pay improper charges and
> concealing from, and otherwise failing to disclose to[]
> Plaintiff the payment of improper claims;
>
> (c) Failing to exercise the care, skill, prudence, and
> diligence under the circumstances that a prudent
> fiduciary acting in a like capacity and familiar with such
> matters would use in paying for healthcare claims

(*Id.* at PageID.305, at ¶ 94).

C.   BCBSM's January 15, 2020 Motion to Dismiss the Amended
     Complaint

BCBSM moved to dismiss the amended complaint.  It argued (1) Comau did

not allege fraud with the requisite Fed. R. Civ. P. 9(b) particularity, (2) Comau

failed to state a claim for breach of fiduciary duty, and (3) the claims based on

4

payments made more than six years before this action are untimely.  (ECF No. 19).

BCBSM argued the facts were borrowed from Dennis Wegner's whistleblower

complaint and the amended complaint never alleges any specific fraudulent

payments made using Plan assets or alleges facts to plausibly suggest such

fraudulent payments occurred.  Comau challenged each of these arguments.  (ECF

No. 21).  Comau argued it sufficiently stated a claim to relief because it alleged

facts from which to infer BCBSM's payment systems were flawed, resulting in

misuse and loss of Plan assets, and that it is premature to determine the triggering

date for the statute of limitations.

District Judge Stephanie Dawkins Davis denied the motion to dismiss.

Judge Davis first concluded Comau alleged a breach of fiduciary duty claim, not

fraud.  Thus, Comau's amended complaint is subject to the Rule 8(a) pleading

standard, not the Rule 9(b) pleading standard.  (ECF No. 25, PageID.569-75).

Next, Judge Davis found the amended complaint meets the pleading requirements

of Rule 8(a).  She noted "Comau's claim essentially asserts that BCBSM, in paying

inflated or otherwise improperly-billed health claims out of its funds, mismanaged

the Plan's funds."  (*Id.* at PageID.578).  That the amended complaint does not

detail how BCBSM's alleged defective systems works did not undermine the

sufficiency of the pleading because the court could reasonably infer from the

5

allegations that BCBSM's process was flawed.  (*Id.* at PageID.580-81).  The Court

described the amended complaint as follows:

> If the allegations in the [first amended complaint] are
> proved, then they would show that an adequate
> investigation would have revealed to BCBSM and a
> reasonable fiduciary that the system was flawed. The
> facts alleged in the FAC also give BCBSM fair notice of
> Comau's claims against it—the payment of inflated
> claims and the failure to fix its processing systems in
> order to prevent the payment of inflated claims. The facts
> additionally support an inference that BCBSM breached
> its fiduciary duty by failing to correct its processing
> system which it knew resulted in the payment of inflated
> claims.

(*Id.* at PageID.583) (internal citations omitted).

Finally, the Court found it is too early to determine when the facts giving

rise to the statute of limitations occurred, so the Court did not determine what the

applicable statute of limitations is.  (*Id.* at PageID.585).

D.    Instant Motion

BCBSM moves pursuant to Fed. R. Evid. 702 for an order excluding

Comau's expert report drafted by Dawn Cornelis of ClaimInformatics.  In the

alternative, BCBSM seeks an order deeming waived Comau's "new theories

presented in its expert report, which are wholly unrelated to the Amended

Complaint," unless Comau amends a second time to include the purported new

theories.  (ECF No. 138, PageID.5104).  And BCBSM seeks leave to file a

dispositive motion without prejudice to potential later dispositive motions and for a stay of discovery until this motion is resolved.

BCBSM's argument for exclusion of the expert report is this: in the amended complaint, Comau alleged BCBSM breached its fiduciary duty by paying grossly inflated claims filed by non-participating providers for routine urine screening.  (*Id.* at PageID.5114-17).  Yet, despite the limited nature of the claim, Comau's expert identified "supposed coding deficiencies," including "allegedly improper bundling of claims, payments that were supposedly medically unnecessary or 'upcod[ed]' (with no indication of how that information could be derived from simply looking at claims), supposed 'duplicate payments,' and other supposed failures to adhere to coding guidelines."  (*Id.* at PageID.5123).  BCBSM asserts none of these issues bear any relation to the payment of grossly inflated urinalysis bills.  (*Id.* at PageID.5123-25).

BCBSM argues the expert report should be excluded because it does not "fit with the facts of the case."  It compares this case to *Argus & Assocs., Inc. v. Pro. Benefits Servs., Inc.*, 2009 WL 1297374, at *3 (E.D. Mich. May 8, 2009), a case in which it says the court sanctioned the plaintiff "by prohibiting use of certain expert testimony as proof at trial where the report failed to identify any examples of the healthcare claims at issue."  (ECF No. 138, PageID.1527, 1528).

As to BCBSM's alternative request to deem the "new theories" of improper payments waived unless Comau amends the complaint to include them, (*id.* at PageID.5129), BCBSM says if Comau filed a second amended complaint to include these claims, it will be able to move to dismiss the new claims.  According to the company, there are many problems with the proposed new claims, such as the fact that technical issues raised in the report are required to be addressed according to the audit procedures set forth in the contract between the parties, not in litigation in this Court.  (*Id.*).

Comau insists its amended complaint allegations are not limited to payments of grossly inflated urinalysis bills submitted by non-participating providers. Rather, Comau asserts it alleged improper payments of grossly inflated healthcare claims *and* that the amended complaint defined "improper payments" to include "a payment for an incorrect amount (including overpayments and underpayments), a payment to an ineligible provider, double billing, payment for services not received, and payment for noncovered services.  Providers submitting claims such as these are considered to be fraudulent."  (ECF No. 97, PageID.2531, 2540; ECF No. 15, PageID.301).  Comau's expert identified $9 million in improper payments stemming from errors including duplicative payments, unbundling, upcoding or wrong code, medically unlikely services, and non-adherence to payment guidelines.  (ECF No. 97, PageID.2533).  Comau argues its expert report identifies

specific improper payments and thus is relevant to the claims in the amended complaint.  (*Id.* at PageID.2541).

In reply, BCBSM maintains the amended complaint is not about double billing or payment for noncovered services.  BCBSM reiterates its position that the complaint is based on gross overpayments by non-participating labs, highlighting in an appendix all the references to urinalysis in both Wegner's employment complaint and Comau's amended complaint.  (ECF No. 103, PageID.2955-56, 2959-61).

Apart from these arguments, Comau contends its expert could not conduct a comprehensive review of the claims data because of deficiencies in the data produced by BCBSM.  The issues include missing provider information, missing payee information, and missing claims.  (ECF No. 97, PageID.2533-36).  In response, BCBSM asserts Comau has all the information it needs to identify these gross overpayments—the service provided, charged and paid amounts, and whether the provider was participating or non-participating.  (ECF No. 103, PageID.2956-57).  At the hearing, Comau asserted nearly $5.4 million in claims data are missing.  Counsel for BCBSM represented on the record there is no more claims data to produce.

## II.   DISCUSSION

### A.   The Expert Report and Amended Complaint

Expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1]  In this circuit, "[t]he Rule 702 analysis proceeds in three stages." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016).  "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702).  Only the second step is at issue.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18).

---

[1] The Court's ruling on BCBSM's motion should not be construed as prejudicial to any future motion to exclude Comau's expert report on a basis different from that asserted here.

Comau's expert reviewed the existing claims data and identified potential breaches of fiduciary duty.  To begin, the expert found 8,634 claims that had no provider information listed and 30,091 claims that had no payee information listed. The expert stated these issues raised fiduciary oversight concerns and these claims were excluded from its claims data analysis.  (ECF No. 87-7, PageID.1722).[2]  The remaining claims totaled an aggregate $109 million in paid claims.  Of this amount, the expert identified $9 million in excessive payments among five error types: duplicate payments, unbundling/incidental/mutually exclusive, upcoding/wrong code, medically unlikely, and non-adherence to payment guidelines.  (*Id.*).

The expert report provides examples of unbundling and upcoding. "Unbundling" occurs when, for example, a provider bills for two services but one of those services is included in the second (codes A and B are billed but code A is included in code B) or both should be billed under a single, more comprehensive code (codes A and B should be billed as code C).  (ECF No. 87-7, PageID.1727; *see id.* at PageID.1728 for examples of upcoding).  "Upcoding" happens when services are billed at a higher-level service although a lower-level service is

---

[2] The Court references the expert report in the sealed filing at ECF No. 87.  The Court recently stayed its Order directing BCBSM and Comau to file the report unsealed pending resolution of BCBSM's planned objection.  Until the dispute regarding the report is resolved, it remains sealed.

warranted or performed.  For example, the expert identified an emergency department claim billed at the highest level of emergency department care, usually reserved for a life threatened event.  Here, however, the patient was treated in the emergency department for "Laceration of lip and oral cavity without foreign body."  The expert characterized this is a non-life-threatening lower-level emergency department visit.  (*Id.* at PageID.1728).  Unbundling and upcoding are essentially examples of overcharged provider bills.

There do not appear to be examples or explanations of the other purported claims errors—duplicate payments, medically unlikely, and non-adherence to payment guidelines.

BCBSM characterizes the amended complaint as alleging breach of fiduciary duty only by paying grossly inflated claims submitted by non-participating providers for urinalysis.  BCBSM thus argues the expert report which speaks of "unbundling" or "non-adherence to payment guidelines" is irrelevant to overpayments for urinalysis.[3]

---

[3] BCBSM cites *Argus & Assocs., Inc. v. Pro. Benefits Servs., Inc*., 2009 WL 1297374 (E.D. Mich. May 8, 2009), as a case that excluded portions of an expert report for failure to identify an inappropriately paid claim.  (ECF No. 138, PageID.5127, 5128).  BCBSM overreaches in its description of that case.  The court excluded some of the expert report and evidence because the plaintiff did not timely provide the report or respond to discovery.  The court previously warned the plaintiff failure to do so would result in a limitation on the presentation of proofs at trial.  The report was not partially excluded because it did not identify the claims alleged in the complaint.  *Argus*, 2009 WL 1297374, at *2-3.

The Court finds BCBSM's characterization of the amended complaint too narrow.  As explained in the Opinion and Order denying the motion to dismiss, the amended complaint alleges BCBSM breached its fiduciary duty through "the payment of inflated claims and the failure to fix its processing systems in order to prevent the payment of inflated claims."  (ECF No. 25, PageID.583).  The amended complaint did not limit the factual basis to provider billing for routine urinalysis—urinalysis was used only as an example of a grossly inflated provider bill paid by BCBSM.  The amended complaint is also not limited to claims submitted by non-participating providers.  Comau defined "Providers" as "health care providers," without limitation to those who were non-participating.  (ECF No. 15, PageID.296, at ¶ 38).  The ruling on the motion to dismiss did not address a limitation to "non-participating" providers.  (ECF No. 25).

Comau views its amended complaint too broadly.  The repeated theme throughout the complaint is that BCBSM knowingly paid inflated healthcare claims.  Comau began its complaint discussing Wegner's investigation into BCBSM's overpayment of routine lab testing.  Comau asserted the overpayments came down to a system error that would have existed for Comau's healthcare claims as well.  In Count I of the complaint, the alleged breaches include, but are not limited to, "Intentionally and knowingly paying grossly inflated and knowingly inflated healthcare claims to Providers."  (ECF No. 15, PageID.305, at ¶ 94).  The

District Judge read the amended complaint to allege breach of fiduciary duty by making payments of inflated claims and failure to fix the system issue.  She described the amended complaint as alleging "BCBSM, in paying inflated or otherwise improperly-billed health claims out of its funds, mismanaged the Plan's funds."[4]  (ECF No. 25, PageID.578).

Comau relies on paragraph 75 of its amended complaint to support its position that the complaint captures all the errors identified in the expert report because those errors are "improper claims."  In a section titled, in part, "BCBSM's Practice of Willingly Paying Improper Claims is Inconsistent with Industry Standards, . . ."  Comau alleges the health insurance industry has standards for evaluating improper claims payments.  Next, at paragraph 75, Comau defines "improper payments" to "include a payment for an incorrect amount (including overpayments and underpayments), a payment to an ineligible provider, double billing, payment for services not received, and payment for noncovered services. Providers submitting claims such as these are considered to be fraudulent."  (ECF No. 15, PageID.301, at ¶ 75).  It is Comau's position that this paragraph defines improper claims for the entire complaint, and thus errors such as duplicate

---

[4] See also Comau's response to the motion to dismiss in which it argued it sufficiently pleaded that its health care claims were subject to BCBSM's universal processing systems and the system failure giving rise to the other *overpayment* cases subjected to Comau to the same issues.  (ECF No. 21, PageID.502).  In other words, in defending its amended complaint the first time, Comau repeated its claim that BCBSM knowingly paid inflated healthcare claims.

payments and payments to ineligible providers are encompassed in the amended complaint.  (ECF No. 97, PageID.2537).

The Court is not convinced.  Taken in context, paragraph 75 (which is the only paragraph to mention payments to an ineligible provider, double billing, payment for services not received, or payment for noncovered services in the entire amended complaint) is not a definition of "improper payments" to be applied to every instance in which Comau uses the term "improper claims" or "improper payments."  Rather, paragraph 75 lays the ground for Comau's point that BCBSM's payment of improper claims goes against industry standards, is inconsistent with how BCBSM holds itself out to the public, and is inconsistent with representations BCBSM makes to its customers.  (ECF No. 15, PageID.303-05).  According to Comau, BCBSM holds itself out as a leader in the industry in identifying and rooting out health insurance fraud.  Considering BCBSM's representations, Comau believed the insurance company was acting in its best interest, but as alleged elsewhere in the amended complaint, its belief was incorrect.  (*Id.* at PageID.304, at ¶ 89).

The amended complaint survived the motion to dismiss because Comau adequately tied allegations of overpayments and systems issues to itself through Dennis Wegner's first-hand knowledge Comau was subject to the same errors. Comau made no similar attempt to tie the list of potential improper payments listed

in paragraph 75 to Comau.  There are no allegations supporting an inference, for example, that BCBSM paid an ineligible provider, paid a double bill, paid for services not received, or paid for noncovered services.  As discussed above, the amended complaint is about payments of "grossly inflated" healthcare provider bills and a system-wide problem that should have been fixed.

The expert's discussion of claims paid that were improperly "unbundled/incidental/mutually exclusive" and "upcoding/wrong code" is relevant to the complaint.  These alleged errors show inflated provider healthcare charges for which BCBSM made payments.  ERISA plaintiffs are given some leeway in their pleading because they "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).  The amended complaint gives BCBSM ample notice that the claims here center on overpayments for healthcare, and not just for urinalysis and/or claims submitted by non-participating providers.  Discovery has revealed more details about inflated and overpaid healthcare charges.  The Court finds nothing inappropriate about this.  It is true Comau wrote of "grossly inflated" claims in the amended complaint, but "grossly inflated" was not defined.  Whether the upcoding, unbundling, and so forth amounts to "gross inflation" can be determined at a later date.  What matters here is these errors evince overpayments and the amended complaint is about

16

overpayments.  Thus, the expert report as it relates to these overcharges is relevant to the claims here.

The remaining errors making up the alleged $9 million in excessive payments identified in the expert report—duplicate payments, medically unlikely services, and non-adherence to payment guidelines—do not describe inflated claims paid for healthcare services and are essentially new claims about BCBSM's breach of fiduciary duty.  Likewise, the expert's identification of further potential breaches of fiduciary duty with respect to missing claims data fields are not part of the amended complaint.  (ECF No. 87-7, PageID.1722).  Comau did not allege or even suggest BCBSM breached its fiduciary duty by excluding provider information or payee information in a small portion of its claims data.  These findings by the expert are not relevant to this case.

For these reasons, BCBSM's motion to compel is **GRANTED IN PART, DENIED IN PART**.  The Court will not exclude the expert report in whole, but portions of the report are irrelevant to the claims here as discussed above.  Those portions of the report should not be used later as proof of breach of fiduciary duty.

The Court will not order Comau to amend the complaint a second time.  This case has been pending for more than two years.  This litigation must move forward.  Further, Comau has not moved to the amend the complaint and opposes

17

amendment now.  The claims in this case are as characterized by the Court in the

Opinion denying the motion to dismiss—payments of inflated healthcare charges.

Now, the request to stay discovery pending resolution of BCBSM's motion

to compel is moot.  Discovery deadlines are addressed below.

The Court will **DENY WITHOUT PREJUDICE** BCBSM's motion to

compel as it relates to the request for permission to file more than one motion for

summary judgment.  The Court is not inclined to grant permission to file more than

one motion for summary judgment until one is filed and defeated.[5]  BCBSM seeks

leave to file a "preliminary" motion for summary judgment because Comau cannot

identify any instance in which "BCBSM paid a grossly inflated charge to a non-

participating provider for routine urine screenings."  (ECF No. 138, PageID.5130).

Again, the claims here are not so limited.  Thus, it is not clear at this point BCBSM

would still move on that basis.

B.    Discovery

Comau asserts its expert could not complete a comprehensive review of the

claims data because of missing provider and payee information.  Comau has also

intimated it has not received a full production of claims data.  At the hearing on the

motion, Comau explained there are nearly $5.4 million in missing claims data that

---

[5] Additionally, this case was not referred to the undersigned to address dispositive motions.  Requests regarding dispositive motions should be addressed to the District Judge.

has yet to be produced.  BCBSM's counsel stated on the record there is no more

claims data to produce.  Were this issue before the Court on a motion to compel

production of claims data, the Court would be unable to compel production of

documents that do not exist.  This issue, however, is not before the Court on a

motion, and so the Court will not make a ruling.

Discovery must continue on the claims as discussed above, and these claims

only.  The Court will **GRANT IN PART** Comau's Emergency Motion to Extend

Discovery.  (ECF No. 115).  The following case management deadlines are

extended by two months from the original dates set at ECF No. 35: the discovery

deadline is moved to **January 24, 2022** and the dispositive motion cut-off is

moved to **March 10, 2022**.  The parties must work diligently to meet these

deadlines and must work cooperatively to schedule the exchange of discovery,

including scheduling depositions.

Comau has three motions to compel pending before the Court.  (ECF Nos.

92, 121, 131).  As it is possible the Court's ruling here impacts some of the relief

requested in some or all of those motions, including BCBSM's responses, the

parties are directed to confer on the remaining discovery disputes.  Specifically, the

parties must confer and determine whether any of the requests for discovery or

objections to discovery requests should no longer be pressed considering this Order

and can be resolved without Court intervention.  The Court will hold a status

conference about the discovery disputes on **December 27, 2021 at 11:00 a.m**.

Call-in information will be filed separately.

     **IT IS SO ORDERED**.

     The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date:  December 16, 2021          s/Curtis Ivy, Jr.
                                 Curtis Ivy, Jr.
                                 United States Magistrate Judge