UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| COMAU LLC,<br>       Plaintiff,<br>v.<br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br>       Defendant.<br>_____/ | Case No.: 19-12623<br><br>Stephanie Dawkins Davis<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER DENYING PLAINTIFF'S MOTION
FOR SANCTIONS (ECF No. 105)**

Now before the Court is Plaintiff Comau LLC's motion for discovery sanctions against Defendant Blue Cross Blue Shield of Michigan ("BCBSM"). (ECF No. 105). Comau contends BCBSM has not complied with the Court's April 19, 2021 discovery order.

A. <u>Background</u>

The factual background of this case has been thoroughly discussed in briefs and Court orders, thus only a brief account is provided here. Through his own investigation, former BCBSM account manager (and manager of the Comau account) Dennis Wegner identified what he believed were instances in which BCBSM was paying grossly inflated provider charges. Wegner presented the issue of an alleged systematic failure leading to overpayments to BCBSM. He then filed

a whistleblower lawsuit against the company, which ended in an arbitration proceeding. At some point, he told Comau it was one of the customers for whom grossly inflated bills had been paid. This lawsuit ensued.

This case is at a stand-still as the parties dispute the core issues of the litigation. To that end, Comau recently moved for leave to file an amended complaint. Relative to the pending motions, the parties agree the Court can proceed to a determination on this motion for sanctions before deciding Comau's motion for leave to amend the complaint.

The course of discovery has been rocky at best. Multiple disputes have arisen at various turns in this case. The dispute in the motion for sanctions stems from this Court's April 19, 2021 discovery Order. On March 17, 2021, Comau moved to compel responses to its first set of requests for production of documents. (ECF No. 39). There were four issues raised in the motion.

One set of documents Comau sought related to Wegner's investigation into the overpayments and his complaint, whether or not they mention customers other than Comau. (ECF No. 39, PageID.677-81). Comau asserted these documents are necessary to show (1) the existence and prevalence of wrongdoing, (2) whether the systems were common to all customers, and (3) BCBSM's knowing concealment of wrongdoing. (*Id.* at PageID.678). BCBSM asserted that it agreed to produce

these documents but would redact names of customers other than Comau. (ECF No. 44, PageID.874-77).

Another issue was BCBSM's refusal to produce documents dated before September 6, 2013 based on a statute of limitations argument. (ECF No. 39, PageID.681-84).

Comau also maintains it was entitled to documents relating to Wegner's arbitration proceeding, including Wegner's sworn deposition testimony. (ECF No. 39, PageID.684-86). BCBSM argued the materials were confidential pursuant to Rule 23 of the AAA Employment arbitration rules and that Comau was inappropriately trying to pull discovery from another matter for this case. (ECF No. 44, PageID.879-80). BCBSM asserted that if it was required to produce arbitration materials, that it only need to produce those documents related to alleged overpayments made on behalf of Comau or about Wegner's investigation into alleged systematic failure leading to overpayments. (*Id.* at PageID.880, n. 5).

Finally, Comau sought production of BCBSM's claims data for Comau. According to Comau, BCBSM produced claims data in February 2021 that was incomplete and missing relevant fields such as admission dates and service/rendering provider specialty codes. (ECF No. 39, PageID.687). BCBSM contended that the disputed fields either did not exist, were already provided, or were not clear to BCBSM. (ECF No. 44, PageID.881).

To resolve the dispute, Judge Whalen granted in part and denied in part Comau's motion to compel. He ordered:

> 1. BCBSM will produce claims data related to Comau, including the names of other customers included in the Comau data;
>
> 2. BCBSM will produce documents that talk about overpayments more generally. The identities of other customers could be redacted, but without prejudice to Comau seeking disclosure of the names at a later date;
>
> 3. The time frame of production is from 2008 forward, without prejudice to Comau seeking discovery of material from an earlier date range; and
>
> 4. BCBSM will produce material from the Wenger arbitration that related to alleged overpayments and Wegner's investigations and communications regarding alleged overpayments.

(ECF No. 49, PageID.1116; ECF No. 48, PageID.1113-14).

The original due date for this discovery was May 19, 2021. This deadline was extended to August 19, 2021. ECF No. 56). On August 13, 2021, the Court superseded the August 19th deadline. In its place, the Court ordered BCBSM to produce non-privileged emails collected pursuant to the parties' joint triage email proposal no later than August 19th, and all other discovery was stayed until Comau identified the healthcare claims it contended are improper or until 60 days after BCBSM made its production of emails. (ECF No. 80). It appears discovery was

allowed to resume upon issuance of a Court order on September 15, 2021. (ECF No. 82).

On October 22, 2021, Comau moved for sanctions arguing BCBSM had not complied with the Court's April 19, 2021 Order. (ECF No. 105).

B.  Standard

Fed. R. Civ. P. 37(b)(2) provides for sanctions when a party disregards a discovery order. Such sanctions may include limiting the disobedient party's proofs or testimony, striking pleadings, monetary sanctions, and dismissing an action when the plaintiff has failed to comply. Rule 37(b) sanctions are discretionary and are reviewed by the court of appeals under an abuse of discretion standard. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997). In determining the appropriate sanction, the trial courts are directed to consider these factors (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

Comau seeks an order prohibiting BCBSM from contesting the breach of fiduciary duty claim and for an award of attorneys' fees in connection with this motion.

C.  Discussion

    1.  Magistrate Judge Authority to Impose Rule 37 Sanctions

Magistrate judges have the authority to issue orders on non-dispositive pretrial motions but must submit a report and recommendation for dispositive motions. 28 U.S.C. § 636; Fed. R. Civ. P. 72. "There is little debate as to whether a magistrate judge can enter an order imposing monetary sanctions on a party under Rule 37." *Builders Insulation of Tennessee, LLC v. S. Energy Sols.*, 2020 WL 265297, at *4 (W.D. Tenn. Jan. 17, 2020) (collecting cases). But where, as here, the moving party seeks dispositive relief, the question becomes whether the magistrate judge may proceed by way of an order or must submit a report and recommendation. A district court in this Circuit addressed this question. After thorough review of relevant case law, the court persuasively concluded that "[t]he majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." *Id.* at *4-5 (collecting cases). Because, as discussed

below, the sanction requested by Comau is not warranted, § 636(b)(1)(A) permits the undersigned to proceed by order rather than report and recommendation.

2. Documents about overpayments more generally

Comau argues BCBSM failed to comply with the Court's Order to produce documents discussing overpayments more generally because BCBSM used a narrow set of search terms leaving out potentially responsive documents. Specifically, BCBSM searched for documents referencing Comau, Wegner, and "non-participating providers" (or "non-par" providers). The problem for Comau is that these terms excluded other kinds of providers. The Court's Order did not make a distinction limiting production to documents referencing non-participating providers. (ECF No. 105, PageID.3179). Plaintiff maintains the search terms were designed to exclude materials referencing "abusive, improper, or fraudulent billing practices" unless the document also mentioned "non-par." Comau asserts all types of providers should be included because its discovery requests defined "Provider" as "any healthcare provider or facility that submits claims to BCBSM to be paid." (*Id.*).

BCBSM argues Comau's complaints are untimely because the parties agreed on the search terms. Comau vehemently disagrees that there was ever an agreement on terms. BCBSM listed many of the search terms it used, and indeed a great deal contain either Wegner, Comau, or non-par in them. That said, the Court

7

cannot conclude BCBSM failed to cooperate in discovery or disobeyed the Court's Order.

As Comau mentions, the Court did not differentiate between non-participating and other providers. This, however, cuts both ways. On one hand, the failure to mention a limitation should convey to a party that there is no limitation. On the other hand, failing to expressly require documents relating to any kind of provider does not translate into BCBSM violated the Order by limiting their production to a specific kind of provider such that sanctions should be awarded. Notably, the issue of non-participating versus participating providers was not before the Court, so the Court did not have reason to mention a limitation or lack of limitation (or to know there could be a potential dispute lurking there).

Further, a remaining dispute concerns the scope of the claims here. Previously, BCBSM moved for an order compelling Comau to align its amended complaint to its expert's report or to file a second amended complaint containing the new claims identified by the expert. Until the Court ruled on that motion, BCBSM proceeded under the belief that the amended complaint allegations were limited to over-inflated charges for urinalysis submitted by non-participating providers. (*See* ECF No. 143; ECF No. 114, PageID.3581, n. 5). The Court disagreed that the amended complaint was so limited. At any rate, BCBSM's view

8

that the complaint was limited to claims about overcharges from non-participating providers was not completely unreasonable.

BCBSM also maintains some documents returned in the search have not been produced because they are privileged and subject to a related pending motion challenging the privilege, or they were produced after discovery reopened upon re-evaluation of the privilege assertion.  (ECF No. 170, PageID.6718, 6720; ECF Nos. 131, 146).

In short, the Court cannot say BCBSM failed to comply with the Court's order or that any failure or delay in production was willful and because of bad faith such that sanctions should be awarded.  In the Court's Order granting in part and denying in part the motion to compel alignment with expert report, the parties were ordered to provide discovery in accordance with the Court's view of the scope of claims in the amended complaint, including discovery of relevant documents related to participating and non-participating providers.  To the extent that such responsive documents still exist that have not been produced and are not privileged, BCBSM must produce them immediately.  With this last production, any prejudice to Comau is thwarted.

      3.      Timeliness of Production of Non-Comau Discovery

Comau contends BCBSM initially refused to produce responsive documents that reference non-Comau customers in violation of the Order, and did not produce

such documents until November 24, 2021, months after it was ordered to do so. (ECF No. 165, PageID.6550-51). BCBSM explains it did not begin producing the ordered discovery until after the District Judge lifted the stay on discovery on September 15, 2021, and from that date through the (original) close of discovery on November 24, 2021, produced documents on a rolling basis. (ECF No. 170, PageID.6712-13).

The Court sees no reason to sanction BCBSM for the timing of its production. Discovery fully re-opened in September. While it would have been ideal for BCBSM to produce all responsive and non-privileged documents in September, a three-month rolling production is not necessarily sanctionable. Discovery was again extended, and the dispositive motion deadline has been stayed. Any prejudice to Comau for "late" production has been or seemingly can be cured.

4. Time Frame of Production

One of the issues in Comau's motion to compel was that BCBSM had refused to provide discovery dated prior to September 6, 2013. The Court ordered that discovery dated 2008 forward be produced. In the motion for sanctions, Comau asserted that as late as October 1, 2021, BCBSM stated it would produce documents from September 6, 2013 through December 31, 2019, in violation of the Court Order. (ECF No. 105, PageID.3183). BCBSM insists Comau's

representations are inaccurate. In its response, BCBSM stated it would and had produced documents from 2008 forward. As for the October 1, 2021 statement, BCBSM explains it inadvertently failed to update the time frame of its responses to Comau's discovery requests—it recognized and corrected the oversight. (ECF No. 114, PageID.3583, n. 7). Comau acknowledged this supplemental production and conceded the conduct related to the timeframe of production was no longer sanctionable. (ECF No. 118, PageID.3792). That said, Comau says this issue "demonstrates[s] the gamesmanship BCBSM is playing with the Court's Order." (*Id.*).

The Court has no reason to disbelieve BCBSM's representation that the omission of discovery before September 6, 2013 was anything but inadvertent, nor can the Court conclude the omission was an act of gamesmanship considering BCBSM cured the mistake once recognized. Again, the delay caused by the mistake has not seriously prejudiced Plaintiff, at least not in any way that has not been or cannot be cured.

    5.    Claims Data

The dispute over claims data began with Comau's contention that the data produced (1) was missing data fields (e.g., provider information, payee information, line-item financial detail), (2) was missing $8.1 million in claims paid on behalf of Comau, and (3) was missing 14 urinalysis claims that BCBSM's

11

expert Mr. Crowell was able to view and analyze. (ECF No. 105, PageID.3184). In response, BCBSM states there are no more claims data to be produced, and its supplemental response brief, it explained the three categories of alleged missing information.

As for missing data fields, BCBSM explained "nearly all of these claims (1) are over a decade old; (2) were maintained on a now retired data system where the content and format of the data varies from how the data is kept today; or (3) are claims processed by other Blue Cross Blue Shield entities from whom BCBSM receives limited information on the claim." (ECF No. 170, PageID.6716; ECF No. 114, PageID.3586). BCBSM asserts any missing data does not result from an incomplete production, but rather the changing claims processing systems and data fields over time. (ECF No. 114, PageID.3586).

If certain data are missing for some claims because of any of the reasons stated, sanctions cannot be awarded for the failure to produce the data.

Comau suggests BCBSM is untruthful when it says it has produced all the existing claims data because after it filed this motion, BCBSM produced $2.7 million in claims data on November 3, 2021 (but "there are still millions of dollars paid by BCBSM unaccounted for in the data."). (ECF No. 165, PageID.6548). The November 3rd production of data (only arguably untimely), without more, does not mean BCBSM is deliberately withholding key data fields. There is no

indication BCBSM withheld specific data points in bad faith or that BCBSM had control over whether the missing information could even be included in the data. Sanctions will not be awarded for missing data fields.

As for the alleged missing $8.1 million in claims paid, BCBSM has continually asserted this amount is not missing. Rather, Comau's expert witness relied on a misunderstanding of the quarterly and annual statements to conclude $8.1 million was missing. "Among other problems," the statements included dental and vision claims that were not part of the claims data, thus appearing to miss claims data. (ECF No. 153, PageID.6001). This is a reasonable explanation. It does not appear BCBSM provided examples of the "other problems" causing the discrepancy between the statements and the data. Comau did not engage with BCBSM's assertions. (*See* ECF No. 165). The Court will not grant sanctions on the suspicion alone that BCBSM is withholding millions in claims data.

Finally, Comau argues there are 14 urinalysis claims missing from the data that BCBSM's expert, Mr. Crowell, analyzed in his expert report. The evidence establishes these 14 claims are not missing and have been produced. Comau asked BCBSM to admit that the 14 urinalysis claims were not included in claims data. (ECF No. 170-5, PageID.6748). In response, BCBSM stated those claims had been produced. It explained eight of the claims were not included in the April 27, 2021 production, but were found when the company discovered approximately 1%

13

of the claims were not pulled in the original data extraction. Those eight claims have been produced. The remaining six claims were included in the April 27, 2021 production. (*Id.* at PageID.6748-49). The Court has no reason to question this assertion. Since the data has been produced, the Court will not grant sanctions against BCBSM in connection with the 14 claims.

For the reasons stated above, the motion for sanctions (ECF No. 105) is **DENIED**.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: March 24, 2022                    s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge